UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| NETLENS TECHNOLOGIES INC.<br><br>    Plaintiff,<br><br>    v.<br><br>MICROSOFT CORPORATION,<br><br>    Defendant. | Case No. 7:25-cv-311<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT AGAINST
MICROSOFT CORPORATION**

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, in which Plaintiff NetLens Technologies Inc. ("NetLens" or "Plaintiff") makes the following allegations against Defendant Microsoft Corporation ("Defendant" or "Microsoft"):

**INTRODUCTION AND PARTIES**

1.  This complaint arises from Defendant's unlawful infringement of U.S. Patent No. 8,910,154 (the "'154 Patent" or "Asserted Patent"). A true and correct copy of the '154 Patent is attached as **Exhibit 1**.

2.  NetLens Technologies Inc. is a corporation organized and existing under the laws of the South Korea, having its place of business at 402-M901, 4th Floor, 13, Saimdang-ro-8-gil, Seocho-gu, Seoul, Republic of Korea.

3.  NetLens owns all rights, title, and interest in the '154 Patent, which generally pertains to innovative techniques for monitoring and diagnostics in virtual environments. The technology disclosed in the '154 Patent introduces a groundbreaking, intelligent system and

method for service-aware virtualization. *See* Ex. 1 at Abstract.  For instance, the system includes virtual instances (*e.g.*, virtual machines) running on virtualization software, each paired with a service manager module. *See id.*  Each service manager module is configured to interact with operations of guest software within its corresponding virtual instance. *Id.*  Additionally, a management interface is coupled to the service manager modules, enabling interaction with the virtual instances. *See id.*

4. Modern software is typically run in the "cloud."  In simple terms, "using the cloud" means using someone else's computer—usually powerful servers accessed over the Internet. Rather than running software on your own local device, it is executed on remote servers housed in large data centers, often located far away.  These servers—and the data centers that contain them—are owned and operated by major technology companies.  One such company is Microsoft, which is among the world's largest cloud providers, controlling, on information and belief, nearly a quarter of the global cloud infrastructure market.

5. A wide variety of software runs in the cloud, including—but not limited to—video games (on both dedicated consoles like the Xbox and personal computers), enterprise software, mobile apps, office productivity suites (such as Microsoft 365), and many web-based applications, such as online stores and cloud-based tools accessed through an internet browser.

6. Running software in the cloud requires a server to "host" the software—that is, to execute it and make it accessible to users.  Traditionally, a server was a physical machine dedicated to hosting and running a limited number of software applications.  However, as the demand for cloud-based software grew, so too did the need for physical servers.  Much like a gas station can only serve a limited number of vehicles at a time, a physical server can only handle a certain

number of users simultaneously. Cloud providers soon recognized that continually adding more physical servers to meet rising demand was both inefficient and costly.

7. Virtual machines help address the growing demand for cloud computing resources. As the name implies, a virtual machine is essentially a simulated computer running within a real, physical machine—such as a server. A virtual machine behaves much like a physical computer: it has its own operating system, applications, files, memory, and storage—all operating independently within the host machine. Crucially, a single physical server can run multiple virtual machines simultaneously, significantly improving resource utilization and efficiency.

8. Virtual machines are valuable because they allow multiple users to share a single physical computer—each running different software programs or even entirely different operating systems—without interfering with one another. They also provide a safe environment for testing new software; if something crashes or fails, it affects only the virtual machine, leaving the underlying physical system unharmed. Ultimately, virtual machines help cloud providers like Microsoft reduce costs, since one powerful physical server can host many virtual machines, eliminating the need for numerous separate physical machines.

9. Prior to the technology disclosed in the '154 Patent, virtual instances (*e.g.*, virtual machines) functioned largely as "black boxes." Users had limited visibility into the internal operations or capabilities of these virtual instances, making them difficult to manage or troubleshoot. At most, a user could tell whether a virtual instance was powered on or off—much like observing a car and knowing the engine is running, but having no insight into whether the radio, air conditioner, or interior lights are functioning properly.

10. The innovative technology described in the '154 Patent introduces a groundbreaking, intelligent system that enables full visibility into each virtual instance (*e.g.*, virtual

machine). It allows users to assess whether all components within a virtual instance are functioning properly, facilitates rapid identification of issues when problems arise, and streamlines the process of troubleshooting or updating software—without disrupting other virtual instances operating on the same system.

11. As further detailed below and upon information and belief, Defendant uses, sells, and offers for sale virtual instance monitoring and diagnostic technologies that practice one or more claims of the '154 Patent. As a result, Defendant is unlawfully infringing the '154 Patent. NetLens therefore seeks both monetary damages and injunctive relief in this action.

12. Microsoft is a corporation organized and existing under the laws of the state of Washington, with a principal place of business located at 1 Microsoft Way, Redmond, Washington 98052-8300. Microsoft is registered to do business in Texas and can be served via its registered agent, Corporation Service Company dba CSC – Lawyers Incorporating Service Company at 211 East 7th Street, Suite 620, Austin, Texas 78701-3218. Microsoft maintains a permanent physical presence within the Western District of Texas, conducting business from at least its locations at: 10900 Stonelake Boulevard, Suite 225, Austin, Texas 78759; Concord Park II 401 East Sonterra Boulevard, Suite 300, San Antonio, Texas 78258; and, on information and belief, other locations in and around the Austin and San Antonio areas.

## JURISDICTION AND VENUE

13. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

14. This Court has personal jurisdiction over Defendant in this action because Defendant has committed acts within this District giving rise to this action and has established

minimum contacts with this forum such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice.  Defendant has conducted and continues to regularly conduct business within the State of Texas and this District.  Defendant has purposefully and voluntarily availed itself of the privileges of conducting business in the United States, the State of Texas, and this District by continuously and systematically placing goods into the stream of commerce through an established distribution channel with the expectation that they will be purchased by consumers in this District.  Defendant directly and/or through intermediaries (including distributors, sales agents, and others), ships, distributes, sells, offers to sell, imports, advertises, makes, and/or uses its products (including but not limited to the products accused of infringement herein) in the United States, the State of Texas, and this District.

15. On information and belief, Microsoft maintains one or more of its data centers in this District in furtherance of infringing acts in this District.  For example, Microsoft maintains data centers in this District, located at: 5150 Rogers Road, San Antonio, Texas 78251; 3823 Wiseman Boulevard, San Antonio, Texas 78251; and 5200 Rogers Road, San Antonio, Texas 78251.

16. Venue is proper in the Western District of Texas pursuant to 28 U.S.C. §§ 1391 and 1400(b) because Microsoft maintains regular and established places of business in this District and has committed acts of infringement within this District giving rise to this action.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 8,910,154

17. NetLens realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

18. NetLens owns all rights, title, and interest in the '154 Patent, titled "Obtaining Diagnostic Information in a Virtual Environment," issued on December 9, 2014. Ex 1.

19. The technology in the '154 Patent was not routine or conventional. The USPTO examined the patented technology and concluded that no prior art, alone or in combination, disclosed or rendered obvious the claims of the '154 Patent.

20. The technology of the '154 Patent is directed to a technological improvement in computer technology, not an abstract idea, and it provides a technological solution to a fundamentally technological problem. Indeed, the problem of comprehensively diagnosing a virtual environment, particularly virtual instances, and troubleshooting issues therein are inherently rooted in computer technology with no non-technological analog, nor can the solution be performed solely within the human mind. For example, the use of service manager modules "allows for application-aware white-box testing of the services running in the virtual instances." Ex. 1 at 4:33-35. Without the use of the service manager modules as set forth in the '154 Patent, "the virtualization system is application unaware and thus not able to verify and validate the current operation of an instance." *Id.* at 4:35-38. "White box testing is a method of testing internal structures or workings of an object or application, as opposed to merely testing the application's functionality, as is typically done in black box testing. In white box testing, an internal perspective of the object is needed to enable testing to be performed on the internal structures and workings of the object. Using black box testing, the usual result is a determination that a virtual instance is enabled. A determination typically cannot be made as to whether an application is running inside the virtual instance, or whether the application is operating correctly. White box testing allows a more detailed analysis to be performed, enabling the root cause of a problem to be located and corrected." *Id.* at 2:49-61.

21.     On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products ("Accused Products") that are, have, use, or require virtual instances and service managers, such as, *e.g.*, Microsoft Azure, Azure Virtual Machines, Azure Monitor, Azure Monitor Agent, Azure Kubernetes Service ("AKS"), Azure Virtual Desktop, Windows 365, Azure VMware Solution, Hyper-V, Data Science Virtual Machine, SQL Server, SharePoint Server, Exchange Server, BizTalk Server, Dynamics AX, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '154 Patent.  The infringement of the Asserted Patent is also attributable to Defendant. Defendant directs and controls use of the Accused Products to perform acts that result in infringement the Asserted Patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

22.     Defendant also knowingly and intentionally induces infringement of claims of the '154 Patent in violation of 35 U.S.C. § 271(b).  Defendant has had knowledge of the '154 Patent and the infringing nature of the Accused Products at least as early as when this Complaint was filed and served on Defendant.  Despite this knowledge of the '154 Patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through online instruction materials on its website) to use the Accused Products in ways that directly infringe the '154 Patent.  Defendant does so, knowing and intending that its customers and end users will commit these infringing acts.  Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '154 Patent, thereby specifically intending for and inducing its customers to infringe the '154 Patent through the customers' normal and customary use of the Accused Products.

23.     Defendant has also infringed, and continue to infringe, claims of the '154 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the

Accused Products, which are used in practicing the process, or using the systems, of the '154 Patent, and constitute a material part of the invention of the '154 Patent. Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the '154 Patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently are, contributorily infringing the '154 Patent, in violation of 35 U.S.C. § 271(c).

24. The Accused Products satisfy all claim limitations of one or more claims of the '154 Patent. A claim chart comparing independent claim 1 of the '154 Patent to an example, representative Accused Product is attached as **Exhibit 2**, which is hereby incorporated by reference in its entirety. NetLens reserves the right to set forth alternative or other possible comparisons between one or more claims of the '154 Patent to the Accused Products.

25. By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured NetLens and is liable for infringement of the '154 Patent pursuant to 35 U.S.C. § 271.

26. As a result of Defendant's infringement of the '154 Patent, NetLens is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court. NetLens is entitled to past damages under 35 U.S.C. § 287. NetLens has complied with the requirements of 35 U.S.C. § 287 and is not aware of any unmarked products that practice the claims of the '154 Patent. In the alternative, no requirement for marking applies.

## **PRAYER FOR RELIEF**

WHEREFORE, NetLens respectfully requests that this Court enter:

a. A judgment in favor of NetLens that Defendant has infringed, either literally and/or under the doctrine of equivalents, the '154 Patent;

b. A permanent injunction prohibiting Defendant from further acts of infringement of the '154 Patent;

c. A judgment and order requiring Defendant to pay NetLens its damages, costs, expenses, and pre-judgment and post-judgment interest for Defendant's infringement of the '154 Patent;

d. A judgment and order requiring Defendant to provide an accounting and to pay supplemental damages to NetLens, including without limitation, pre-judgment and post-judgment interest;

e. A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to NetLens its reasonable attorneys' fees against Defendant; and

f. Any and all other relief as the Court may deem appropriate and just under the circumstances.

## **DEMAND FOR JURY TRIAL**

NetLens, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated: July 14, 2025

Respectfully submitted,

*/s/ David L. Hecht*
David L. Hecht
Hecht Partners LLP
125 Park Avenue, 25th Floor
New York, NY 10017
Tel: 212-851-6821
E: dhecht@hechtpartners.com

*Attorneys for Plaintiff NetLens Technologies Inc.*